# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| KENNETH D. BELL, in his capacity as court-appointed Receiver for Rex Venture Group, LLC d/b/a ZeekRewards.com,<br><br>Plaintiff,<br><br>vs.<br><br>HAGIT ROCKAH, JACOB STINER, TZAHI ROZENTAL, ITZHAK HAREL, PNINA SORASKI, HAVA LIPCER, SIGALIT RAHAT, DEMYAN MICHAELI, EREZ SHAKED, MENAHEM LIPCER, RIVKA HAIMOVITZ, OSHRIT MARCIANO, BARUCH HEYMAN, SHEMUEL COHEN, ILAN DORON, and MESHULAM SHAPIRA,<br><br>Defendants. | Civil Action No. 3:15-cv-193 |

### RECEIVER'S RESPONSE IN OPPOSITION
### TO DEFENDANTS' MOTION TO DISMISS COMPLAINT
### AND QUASH SERVICE OF PROCESS

This is one of the several "clawback" actions filed by the Receiver of Rex Venture Group, LLC ("RVG") against Net Winners in the ZeekRewards scheme. As in other cases filed against Net Winners who reside outside the United States, the Israeli Defendants in this action have challenged the Court's jurisdiction. For the same reasons found by the Court in recently denying the same arguments made by another foreign Net Winner, the Court should find that it has personal jurisdiction over these Defendants, all of whom knowingly chose to seek and obtain large profits from their voluntary, intentional and extensive participation in the ZeekRewards

scheme in North Carolina.  *See* Order dated February 4, 2016, *Bell v. Brownie*, *et al.*, Civil Action No. 3:15cv70 (Doc. No. 24).

Further, these Defendants assert that affirmative defenses based on contractual limitations and choice of law arguments should bar the Receiver's claims.  These arguments, which are based on an alleged agreement not mentioned in the Receiver's complaint, are premature and not properly raised in a motion to dismiss.  Therefore, while these arguments will ultimately be shown to be wrong on the merits, the Court should deny the present motion and wait to consider these defenses until after they are asserted in an answer, are subject to discovery and raised in a motion for summary judgment (if Defendants decide to do so).

Finally, Defendants seek to quash service of the summons and Complaint, claiming "some" of the Defendants have not been served and others have not been provided copies of the Complaint in their native language.  As shown below, all but one of the Defendants have been properly served[1] and there is no obligation – as even admitted by Defendants – for the Receiver to translate the Complaint into Hebrew for the Defendants.  Therefore, the motion to quash service as to those defendants who have been served should be denied.

## FACTS RELEVANT TO PERSONAL JURISDICTION

The Defendants were all residents of Israel during their participation in ZeekRewards. Each of these Israeli Defendants in this action signed up with ZeekRewards between July 17, 2011 and December 1, 2011.  *See* Exhibit A (Affidavit of Michael Busen ("Busen Aff.")) ¶ 7. RVG records show that on their sign up date each of the Defendants created a user account on the ZeekRewards website and typed in a username, his or her actual name, address, and other

---

[1] As discussed below, it is the Receiver's hope that in light of this defendant's engagement of counsel and participation in this motion that service can be agreed without further effort and expense.

2

details.  *Id.*  Defendants paid from $343.00 to $10,263.09 to ZeekRewards for subscriptions and VIP/Sample bids between July 17, 2011 and August 13, 2012.  Busen Aff. ¶ 8; *Id. at* Ex. 4–18.  Their total net winnings ranged from $53,219.36 to $317,990.31.  *Id.* ¶ 8.  Each Defendant ultimately built an extensive downline ranging from 878 to 27,883 paying members during the course of the scheme.  *Id.*  Total members who lost money in each Defendant's downline range from 565 to 13,812, with the total financial loss to each Defendant's downline ranging between $1,011,958.54 and $20,755,802.62.  *Id.*

RVG made known to anyone interested in the ZeekRewards program that the company was based in North Carolina, in the United States of America.  At the top of the ZeekRewards homepage, where these Defendants logged in every day, there was a conspicuous "About Us" link.  *See* Busen Aff. at Ex. 1 (screen print of ZeekRewards homepage).  A single click on the "About Us" link disclosed the following:

> Zeekler and ZeekRewards are owned by Rex Venture Group LLC, a subsidiary of Lighthouse America, US (NV) company.  The company was established on June 24, 1997 and adopted the d/b/a Lighthouse America later that year.
>
> *Our headquarters is located in the beautiful town of Lexington, NC, USA on the I-85 corridor connection [sic] Charlotte and Raleigh . . . .*

*See* Busen Aff. at Ex. 2 (screen print of "About Us" page of ZeekRewards website) (emphasis added).  The "About Us" page further stated:

> **Office Hours & Location**
>
> *Home office is located at 803 West Center St., Lexington, NC 27292*
>
> Zeekler & ZeekRewards primarily operates online with skype and email support.  Office hours are 9:30AM to 5:00PM EST Monday – Friday.

*Id.* (emphasis added).  And, there was no question that the company not only was headquartered in but also operated in the USA.  The ZeekRewards homepage stated:

3

**Here's How It Works:**

> Each night after the close of the business day *(east coast USA time)* the company tallies its sales and shares up to 50% of its net profits with its qualified affiliates.*

Busen Aff. at Ex. 1 (screen print of ZeekRewards home page) (emphasis added). Moreover, on the "How It Works" section of the ZeekRewards website, there is an image of United States currency at the top of the page. *Id.* at Ex. 3 (screen print of "How It Works" section of ZeekRewards website).

From the day they signed up with ZeekRewards, the Defendants **actively** directed efforts and attention to ZeekRewards, in North Carolina, **nearly every day** until the scheme's collapse in August 2012. Starting on July 18, 2011 and continuing each day (with few, if any, exceptions) through August 16, 2012, when ZeekRewards was shut down, each of the Defendants logged into his or her "back office" page to report having met the so-called daily "advertising" requirement. *See* Busen Aff. at Ex. 4a–18a (summary spreadsheets of claimed ad placement activity for each Defendant).[2] In addition, on a frequent, often weekly basis, each of the Defendants logged in to the ZeekRewards site to request a cash-out payment from the scheme. *See* Busen Aff. at Ex. 4b–18b (summary spreadsheets of cash-out requests and payments). These payments came from ZeekRewards' account at a bank in North Carolina and all the money requested and received from ZeekRewards was stated in US dollars.[3]

---

[2] While the computer servers for ZeekRewards were housed in Miami, Florida at a vendor site, all interaction went through the servers and directly to North Carolina, where the ZeekRewards insiders operated the scheme. North Carolina was also the destination of all ad placement reporting and the source of all payments to net winners.

[3] The Defendants argue that they were paid by ZeekRewards via e-wallet for the majority of their transactions rather than in the form of a paper check. (Def. Br. at 11). This assertion, if true, is a distinction without a difference. Whether ZeekRewards paid the funds to Defendants in check form or via transfer to the e-wallet account of the Defendants' choosing, the actual funds came

Moreover, these Defendants also directed their actions to North Carolina through the ZeekRewards site by frequently changing the allocation of their daily "Retail Profit Pool" ("RPP") payouts between the repurchase of VIP bids and "available cash." *See* Busen Aff. at Ex. 4c–18c (summary spreadsheets of historical allocation percentages between bid repurchase and cash available). And, four of them even traveled to North Carolina to visit ZeekRewards' headquarters. Defendants' Memorandum at 3–4.

## **LEGAL ANALYSIS**

**I.   The Governing Law of Personal Jurisdiction under the Laws of the United States and North Carolina Supports this Court's Exercise of Personal Jurisdiction over the Defendants**

The Court recently addressed the same issues and arguments presented by this motion in another similar "clawback" action, *Bell v. Brownie*. *See Bell v. Brownie*, Case No. 3:15-cv-70, *Order* dated February 4, 2016 (Doc. No. 24). Based on the legal analysis and grounds stated in the Order denying the motion to dismiss in *Brownie*,[4] together with the particular facts concerning these Defendants' participation in Zeek as discussed above and summarized below, the Court should find that it has personal jurisdiction over these Defendants and deny their motion to dismiss.

As discussed in *Brownie*, this Court can exercise personal jurisdiction over Defendants to the full extent that they would be subject to jurisdiction under North Carolina law. *See* Fed. R. Civ. P. 4(k)(1)(A); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Under North

---

from Zeek's North Carolina bank and were paid to the Defendants. It is of no jurisdictional consequence that an internet payment processor was used to facilitate the transaction.

[4] The Receiver's memorandum in opposition to the motion to dismiss in *Bell v. Brownie*, which includes the more detailed legal analysis of these issues already reviewed by the Court, is equally applicable to this motion and can be found at Doc. No. 10 in that action.

Carolina law, the breadth of personal jurisdiction that can be asserted under § 1-75.4 extends to any Defendant who meets the minimal contact requirements of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). *See Brownie,* Case No. 3:15-cv-70, *Order* dated February 4, 2016 at 5–7.

Like Defendant Fraser in *Brownie*, Defendants' repeated, consistent and extensive contacts with the ZeekRewards program in North Carolina are more than sufficient to satisfy the standard of "minimum contacts" based on specific personal jurisdiction. These Defendants voluntarily and intentionally signed up for a scheme stated to be "headquartered" in North Carolina and then had daily purposeful interaction with the scheme, including ad placement notifications, "playing the game" by requesting particular allocations between "bid purchases" and "available cash," and directing the payment of over $1.9 million to their accounts. And, it is these contacts with the State, including the repeated requests and payments of money by and to Defendants in and from North Carolina, which are the genesis of the claims against them in this action. Thus, Defendants satisfy all the elements of the governing *ALS Scan* test. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 712–714 (4th Cir. 2002).

Also, as in *Brownie*, North Carolina has a clear interest in supporting the RVG Receivership of a company headquartered in North Carolina, protecting victims of unlawful schemes in the state and discouraging those who might try to profit from such schemes (whether with direct knowledge of the fraud or simply participating in a program "too good to be true").

Moreover, Defendants invoked the benefits and protections of the law of North Carolina by their intentional interactions and requests for funds in connection with the ZeekRewards program. Had they lost money like the many thousands of victims under them in the pyramid, Defendants would have been able to seek the protection of the North Carolina laws being

asserted to protect those involved in the scheme – as a number of the victims they recruited to the scheme have already done. Finally, the efficient resolution of this controversy in one forum rather than multiple suits in other countries weighs heavily in favor of the W.D.N.C. exercising personal jurisdiction over Defendants and the other international net winners who intentionally participated in and profited from a scheme advertised as "headquartered" in North Carolina.

The Court should further find that the exercise of personal jurisdiction over the Defendants is fair and just. Defendants voluntarily and intentionally sought to be a part of the scheme in the hopes of making money here in North Carolina (whether they did it in person or through a computer). Even if Defendants had no actual knowledge that they were doing business in North Carolina, Defendants cannot avoid personal jurisdiction by putting their heads in the sand and failing to simply click on the "About Us" link displayed on the website which identified RVG's headquarters and offices in North Carolina. Indeed, a number of the Defendants even visited the ZeekRewards North Carolina headquarters.

Defendants did business with a North Carolina-based company, requested payments (which came from a North Carolina bank) and sought and obtained profits from their participation in the scheme. Defendants knew or should have known that if they purposefully availed themselves of an opportunity to make money in North Carolina (whether or not they cared to find out the actual location of the scheme) that any claims related to their participation might be brought in a court in North Carolina. To hold otherwise would be to allow individuals outside the state to intentionally come to North Carolina electronically and engage in conduct that subjects them to claims but effectively avoid liability because of the distance and cost of pursuing them outside of North Carolina. Accordingly, it is both fair and just for this Court to

7

exercise jurisdiction over Defendants based on their intentional, repeated and extensive participation in the ZeekRewards scheme in North Carolina.

## II. Defendants' Contractual Limitations and Choice of Law Arguments are Defenses that Should Not be Decided in a Motion to Dismiss and are Wrong on the Merits

In addition to their jurisdictional argument, Defendants argue that the case should be dismissed based on limitations and choice of law provisions contained in an alleged "Terms of Service" document related to the ZeekRewards website. As discussed below, these arguments are premature in the context of a motion to dismiss, and, in any event, lack merit. If any agreement might limit the Receiver's claims,[5] then the document which appears to relate to the actual purchases at issue – a "Purchase/Subscription Agreement" (attached to Defendants' Memorandum at App. 31–34) – would be the relevant agreement. That Purchase/ Subscription agreement, which Defendants strikingly fail to even mention in their brief, specifically chooses the law of North Carolina as the applicable law and does not refer to any period of limitation (other than by reference to the use of North Carolina law, which has a four year statute of limitations that easily covers this action).

### a. Defendants' Limitations and Choice of Law Arguments are Premature for a Motion to Dismiss

The Receiver has asserted claims based on the Defendants' receipt of fraudulently transferred funds from a now-defunct Ponzi scheme. He has not asserted claims based on a

---

[5] Indeed, before asserting <u>any</u> contract against the Receiver, Defendants would first need to establish that the Receiver's claims could properly be limited by an earlier agreement to which the Receiver was not a party. *See*, *e.g.*, *Hodgson v. Kottke Associates, LLC*, No. CIV.A 06-5040, 2007 WL 2234525, at *7 (E.D. Pa. Aug. 1, 2007) (holding that a Receiver was not bound by a prior settlement agreement entered into by the principal of a Ponzi scheme entity on behalf of that entity).

contract, nor does the Complaint mention a contract or agreement involving the Defendants and RVG. Nevertheless, Defendants go outside the four corners of the Complaint to assert that a "ZeekRewards Terms of Service" document related to the ZeekRewards website somehow requires all claims having anything to do with ZeekRewards to be filed within one year. This alleged argument, which relies upon information outside the pleadings, raises issues that are premature and not appropriate for resolution in a motion to dismiss.

Asserting that a claim is time-barred is an affirmative defense under Fed. R. Civ. Proc. 8, and the Fourth Circuit has instructed that such limitations arguments should generally not be considered on a motion to dismiss.

> [A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6) . . . generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[] on the face of the complaint."

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). "To require otherwise would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to an affirmative defense even before the affirmative defenses are raised." *Id.* at 466. Therefore, "asserting an affirmative defense, like a statute of limitations defense, in a motion to dismiss presents a particular 'procedural stumbling block' for Defendants." *CSX Transp., Inc. v. Gilkison*, 406 F. App'x 723, 728 (4th Cir. 2010) (quoting *Forst*, 4 F.3d at 250). In sum, unless a case qualifies as one of the rare circumstances in which the face of the complaint requires Rule 12(b)(6) dismissal on a limitations defense, the issue "is more properly reserved for consideration on a motion for summary judgment." *Forst*, 4 F.3d at 250; *see also CSX Transp.,*

406 Fed. Appx. at 730; *Dickerson v. TLC The Laser Eye Center Inst., Inc.*, 493 Fed. Appx., 390, 393 (4th Cir. 2012).

The Defendants have not shown, nor can they establish, that this case is one of those "rare circumstances" allowing consideration of a limitations argument on a Rule 12(b)(6) motion. The Complaint makes no mention of the ZeekRewards Terms of Service, or any agreement for that matter. Because all facts necessary to the affirmative defense do not "clearly appear on the face of the complaint," the Court should deny the motion to dismiss and defer consideration of Defendants' limitations argument until such time that it is properly raised later in this action.

The same reasoning and result applies to Defendants' "choice of law" argument, which is based on the same "Terms of Service" website document that Defendants rely on in making their limitations argument. Because any contractual choice of law argument would similarly be a defense based on facts outside the pleadings, it is not properly the subject of a motion to dismiss. Instead, it should be included in the Defendants' answer. Then, after discovery, the defense could possibly be raised in a summary judgment motion if there are no disputed facts related to the defense.

### b. Defendants' Limitations and Choice of Law Arguments are Wrong on the Merits

Although the Court should not decide Defendants' claimed limitations and choice of law defenses in the context of this motion to dismiss and the full consideration of the merits of these arguments cannot proceed until later in the action, the lack of merit of these defenses is briefly summarized below.

Both defenses rest on the incorrect assumption that the alleged "ZeekRewards Terms of Service" agreement applies to the Receiver's claims. On the contrary, the Terms of Service

document merely reflects terms for any "Visitors" who use the ZeekRewards *website*. "Visitors" are defined to include any "visitors" and "viewers" as well as actual "affiliates" and "customers." Further, the "Services" that are the subject of the agreement are a defined term under the agreement that includes only the communication "features" of the program, such as "communications tools, forums, events and other services." Defendants' Memorandum, App. at 25. Accordingly, the period of limitations for claims "arising out of or related to use of the Service or the TOS" does not cover any claim broadly connected in any way to ZeekRewards, as Defendants appear to suggest. Instead, it is only applicable to claims related to the Zeek communications "Services" as defined in the agreement.

The conclusion that the ZeekRewards website's Terms of Services for "Visitors" does not and could not apply to the Receiver's claims in this action is even clearer when considered in the context of the ZeekRewards "Purchase/Subscription Agreement" (the "Purchase Agreement"). Unlike the "Terms of Service," the Purchase Agreement is explicitly applicable to "WHEN YOU PURCHASE A PRODUCT OR SERVICE FROM THIS WEBSITE" (emphasis in original), and the subject matter of the agreement is stated to be the "product, service or subscription described in promotional or sales materials." *See* Defendants' Memorandum, App. at 31. Thus, to the extent any agreement governs claims related to the "CONDITION OF SALE" of the ZeekRewards products and program, it would be the Purchase Agreement, not the website's "Terms of Service." *Id.* (emphasis in original).

Defendants' "choice of law" and limitations arguments (arguing for the application of Nevada law and a one year limitations period) cannot survive under the terms of the Purchase Agreement. The agreement specifically provides that "Buyer agrees that the applicable law to be applied shall, in all cases, be that of the state of the Seller, North Carolina." *Id*. at 34. Also, the

Purchase Agreement has no limitations period, other than to reference North Carolina law, which has a four year limitations period for fraudulent transfer actions. *Id.* This case was filed well within that four-year period.

Accordingly, if Defendants choose to raise these limitations and choice of law defenses in the future, they should be rejected on the merits.

### III. The Receiver Obtained Effective Service of Process for the Defendants

Contrary to the allegations in Defendants' motion, the Receiver obtained effective service of process for all Defendants other than one in this lawsuit.[6] Attached to this motion as Exhibit B are the proofs of service for fourteen of the fifteen Defendants in this action showing that they were effectively served.[7]

The Defendants also argue that "[t]heir native language is Hebrew, and they are having difficulty understanding the allegations against them." Defendants' Memorandum at 15. However, Defendants cite no legal authority supporting the notion that the Summons and Complaint should have been translated to Hebrew before being served upon them. To the

---

[6] The remaining defendant, Oshrit Martziano, has moved to dismiss the Receiver's claims and quash service of process. However, the Receiver has not yet been successful in serving her. The Receiver understands from discussions with his Israeli counsel that Ms. Martziano appears to be evading service. It is the Receiver's hope that in light of this Defendant's engagement of counsel and participation in this motion that this Defendant will allow counsel to agree to accept service on her behalf. If not, then the Receiver will continue his attempts to serve Defendant Martziano with process and seek to recover from Defendant Martziano the additional costs incurred in effecting service.

[7] The Complaint lists two names based on the ZeekRewards database records that Defendants have clarified is a single Defendant. Defendants Tzahi Rozental and Itzhak Harel now appear to be a single Defendant by the name of Yitzhak (Harel) Ben Aharon Rozental. The Receiver reserves all his rights in this regard should discovery prove otherwise. Further, many of the Defendants in their motion use similar yet different names from the ones they used when signing up with ZeekRewards, resulting in spelling discrepancies between the Receiver's Complaint and the Defendants' motion. Where differences exist, the Receiver has referred to the Defendants by the names they use in their motion and affidavits.

contrary, they candidly admit that "[u]nder the Hague Convention, Israel permits documents to be served in English, Hebrew, or Arabic." Defendants' Memorandum at 15 n.12. The Receiver agrees that Israel allows documents in English to be served under the Hague Convention, and he ensured that this was the case before serving these Defendants with English-language documents. Any difficulty the Defendants claim to have in "understanding the allegations against them" can no doubt be resolved by consulting the experienced attorney they have engaged to represent them (or probably just using the free Google translator service).

The Receiver obtained effective service of process for all but one of the Defendants in this lawsuit. All Defendants have engaged counsel and are on notice of the Receiver's claims against them. Any objections regarding the language in which the documents were served should be disregarded and the motion to quash service of process denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss and quash service of process.

Respectfully submitted this 19th day of February, 2016.

          By: /s/ Irving M. Brenner
          Kenneth D. Bell, Receiver, Esq., N.C. Bar No. 10800
          Irving M. Brenner, Esq., N.C. Bar No. 15483
          Matthew E. Orso, NC Bar No. 42409)
          MCGUIREWOODS LLP
          201 North Tryon Street, Suite 3000
          Charlotte, NC 28202
          Telephone: 704-373-4620
          Facsimile: 704-373-8836
          kbell@mcguirewoods.com
          ibrenner@mcguirewoods.com
          morso@mcguirewoods.com

          *Counsel for the Receiver*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic copies to counsel of record registered to receive electronic service.

This 19th day of February, 2016.

                                                   /s/ Irving M. Brenner