# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:15CV193

| | |
|---|---|
| KENNETH D. BELL, in his capacity as court-appointed Receiver for Rex Venture Group, LLC d/b/a ZeekRewards.com, | ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ORDER ) ) |
| HAGIT ROCKAH, et al., | ) ) ) |
| Defendants. | ) ) ) ) ) ) |

This matter is before the Court upon Defendants' Motion to Dismiss Complaint and Quash Service of Process. (Doc. No. 9). The Receiver has filed a response in opposition to these motions but Defendants have not filed a Reply.

This is one of the several "clawback" actions instituted by the Receiver of Rex Venture Group, LLC ("RVG") against Net Winners in the ZeekRewards scheme. Recently, in another similar "clawback" action, *Bell v. Brownie*, the Court addressed some of the same issues and arguments presented by these motions. *See*, *Bell v. Brownie*, Case No. 3:15-cv-70, *Order*, dated February 4, 2016 (Doc. No. 24). Based on the legal analysis and grounds stated in the Order denying the motion to dismiss in *Brownie*, together with the particular facts concerning

1

Defendants' participation in Zeek as discussed below, the Court finds that Defendants' motions should be denied.

**FACTUAL BACKGROUND**

The Defendants were all residents of Israel during their participation in ZeekRewards. Each of the Israeli Defendants in this action signed up with ZeekRewards between July 17, 2011 and December 1, 2011. (Doc. No. 10-1, ¶ 7). RVG records show that on their sign up date each of the Defendants created a user account on the ZeekRewards website and typed in a username, his or her actual name, address, and other details. *Id*. Defendants paid from $343.00 to $12,934.00 to ZeekRewards for subscriptions and VIP/Sample bids between July 17, 2011 and August 13, 2012. *Id*. at ¶ 8. Their total net winnings ranged from $53,219.36 to $316,584.31. *Id*. Each Defendant ultimately built an extensive downline ranging from 878 to 27,883 paying members during the course of the scheme. *Id*. Total members who lost money in each Defendant's downline range from 565 to 13,812, with the total financial loss to each Defendant's downline ranging between $1,011,958.54 and $20,755,802.62. *Id*.

RVG made known to anyone interested in the ZeekRewards program that the company was based in North Carolina, in the United States of America. At the top of the ZeekRewards homepage, where these Defendants logged in every day, there was a conspicuous "About Us" link. *See Id.* at ¶ 9, Exhibit 1. A single click on the "About Us" link disclosed the following:

> Zeekler and ZeekRewards are owned by Rex Venture Group LLC, a subsidiary of Lighthouse America, US (NV) company. The company was established on June 24, 1997 and adopted the d/b/a Lighthouse America later that year.
> *Our headquarters is located in the beautiful town of Lexington, NC, USA on the I-85 corridor connection [sic] Charlotte and Raleigh . . . .*

*See Id*. at ¶ 10, Ex. 2 (screen print of "About Us" page of ZeekRewards website) (emphasis added). The "About Us" page further stated:

> **Office Hours & Location**
>
> *Home office is located at 803 West Center St., Lexington, NC 27292*
>
> Zeekler & ZeekRewards primarily operates online with skype and email support. Office hours are 9:30AM to 5:00PM EST Monday – Friday.

*Id.* (emphasis added). Moreover, there was no question that the company not only was headquartered in but also operated in the USA. The ZeekRewards homepage indicated that it operated on "east coast USA time" and dealt in United States currency. *Id*. at ¶¶ 11-12, Ex. 1, 3. In other words, it was no secret that ZeekRewards operated out of North Carolina.

From the day they signed up with ZeekRewards, Defendants actively directed efforts and attention to ZeekRewards, in North Carolina, nearly every day until the scheme's collapse in August 2012. Starting on July 18, 2011 and continuing each day (with few, if any, exceptions) through August 16, 2012, when ZeekRewards was shut down, each of the Defendants logged into his or her "back office" page to report having met the so-called daily "advertising" requirement. *See Id.* at Ex. 4a–18a (summary spreadsheets of claimed ad placement activity for each Defendant). In addition, on a frequent, often weekly basis, each of the Defendants logged in to the ZeekRewards site to request a cash-out payment from the scheme. *See Id.* at Ex. 4b–18b (summary spreadsheets of cash-out requests and payments). These payments came from ZeekRewards' account at a bank in North Carolina and all the money requested and received from ZeekRewards was stated in US dollars. Moreover, these Defendants also directed their actions to North Carolina through the ZeekRewards site by frequently changing the allocation of their daily "Retail Profit Pool" ("RPP") payouts between the repurchase of VIP bids and "available cash." *See Id.* at Ex. 4c-18c (summary spreadsheets of historical allocation percentages between bid repurchase and cash

available). Moreover, Defendants admit that four of them even traveled to North Carolina to visit ZeekRewards' headquarters.

**DISCUSSION**

As discussed in *Brownie*, this Court can exercise personal jurisdiction over these Defendants to the full extent that they would be subject to jurisdiction under North Carolina law. *See* Fed. R. Civ. P. 4(k)(1)(A); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Under North Carolina law, the breadth of personal jurisdiction that can be asserted under § 1-75.4 extends to any defendant who meets the minimal contact requirements of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). *See Brownie,* Case No. 3:15-cv-70, *Order* dated February 4, 2016 at 5-7.

Like Defendant Fraser in *Brownie*, Defendants' repeated, consistent and extensive contacts with the ZeekRewards program in North Carolina are more than sufficient to satisfy the standard of "minimum contacts" based on specific personal jurisdiction. These Defendants voluntarily and intentionally signed up for a scheme stated to be "headquartered" in North Carolina and then had daily purposeful interaction with the scheme, including ad placement notifications, "playing the game" by requesting particular allocations between "bid purchases" and "available cash," and directing the payment of over $1.9 million to their accounts. And, it is these contacts with the State, including the repeated requests and payments of money by and to Defendants in and from North Carolina, which are the genesis of the claims against them in this action. Thus, Defendants satisfy all the elements of the governing *ALS Scan* test. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 712-714 (4th Cir. 2002).

Also, as in *Brownie*, North Carolina has a clear interest in supporting the RVG Receivership of a company headquartered in North Carolina, protecting victims of unlawful

4

schemes in the state and discouraging those who might try to profit from such schemes (whether with direct knowledge of the wrongdoing or simply participating in a program "too good to be true").

Moreover, Defendants invoked the benefits and protections of the law of North Carolina by their intentional interactions and requests for funds in connection with the ZeekRewards program. Had they lost money like the many thousands of victims under them in the pyramid, Defendants would have been able to seek the protection of the North Carolina laws being asserted to protect those involved in the scheme – as a number of the victims they recruited to the scheme have already done. Finally, the efficient resolution of this controversy in one forum rather than multiple suits in other countries weighs heavily in favor of the W.D.N.C. exercising personal jurisdiction over Defendants and the other international net winners who intentionally participated in and profited from a scheme advertised as "headquartered" in North Carolina.

The Court further finds that the exercise of personal jurisdiction over these Defendants is fair and just. Defendants voluntarily and intentionally sought to be a part of the scheme in the hopes of making money here in North Carolina (whether they did it in person or through a computer). Even if Defendants had no actual knowledge that they were doing business in North Carolina, they cannot avoid personal jurisdiction by putting their heads in the sand and failing to simply click on the "About Us" link displayed on the website which identified RVG's headquarters and offices in North Carolina. Indeed, some Defendants even visited the ZeekRewards North Carolina headquarters.

Defendants did business with a North Carolina-based company, requested payments (which came from a North Carolina bank) and sought and obtained profits from their participation in the scheme. Defendants knew or should have known that if they purposefully availed

5

themselves of an opportunity to make money in North Carolina (whether or not they cared to find out the actual location of the scheme) that any claims related to their participation might be brought in a court in North Carolina. To hold otherwise would be to allow individuals outside the state to intentionally come to North Carolina electronically and engage in conduct that subjects them to claims but effectively avoid liability because of the distance and cost of pursuing them outside of North Carolina. Accordingly, it is both fair and just for this Court to exercise jurisdiction over these Defendants based on their intentional, repeated and extensive participation in the ZeekRewards scheme in North Carolina.

In addition to their jurisdictional argument, Defendants argue that the case should be dismissed based on limitations and choice of law provisions contained in an alleged "Terms of Service" document related to the ZeekRewards website. This argument, which relies upon information outside the pleadings, raises issues that are premature and not appropriate for resolution in a motion to dismiss.

With regard to the Motion to Quash, the Receiver has established that he has obtained effective service of process for all but one of the Defendants in this lawsuit. Nevertheless, Defendants complain that the Summons and Complaint were not translated into their native Hebrew language. However, they admit that no such requirement exists under the Hague Convention. For the foregoing reasons,

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss and Quash Service of Process is hereby DENIED.

Signed: August 22, 2016

Graham C. Mullen
United States District Judge